## No. 11,753.

### ALEXANDER, ET AL. v. GARRAMONE, ET AL.

Decided September 26, 1927.

Action to restrain obstruction of public highway. Decree for plaintiffs.

### *Affirmed.*

1. HIGHWAYS—*Dedication.* Evidence reviewed and held to justify finding of the trial court that there was a dedication of a public highway.

2. DEEDS—*Exceptions.* Where grantees accepted deeds subject to rights of way for roads, they are held bound thereby.

3. HIGHWAYS—*Dedication—Acceptance.* Evidence held to support a finding of the trial court that a dedication of a highway had been accepted by the public.

*Error to the District Court of Adams County, Hon. Samuel W. Johnson, Judge.*

Mr. JOEL E. STONE, Mr. EDWARD L. COMPTON, for plaintiffs in error.

Mr. HARRY BEHM, for defendants in error.

*Department Two.*

MR. JUSTICE BUTLER delivered the opinion of the court.

THE plaintiffs in error (defendants below) seek the reversal of a decree in favor of the defendants in error (plaintiffs below), restraining the former from obstructing a public road, and commanding them to remove certain obstructions already placed there. The parties will be referred to as they appeared in the trial court. The question to be determined is, whether a certain strip of

ground is a public road. If it is, the judgment should be affirmed; if it is not, the judgment should be reversed.

At one time the northwest quarter of a certain section of land in Adams county was owned by Miers Fisher. He died, leaving a will, and in the spring of 1919, Thomas Wolfe, the executor, sold to plaintiffs Vendue Garramone, Rocco Garramone and Angelo Spero and his wife, Lucia, separate parcels of land extending north from the east and west center line of the quarter section. Though the evidence is conflicting, there is evidence tending to show that at that time Wolfe gave them to understand that the road in front of their premises would be wholly on the south side of the center line of the quarter section; that shortly thereafter, in the spring of that year, Wolfe laid out across the quarter section a road 40 feet wide adjoining and south of the center line; that he set stakes at the ends of the road and in the center, 40 feet south of the center line of the quarter section; that later Wolfe contracted to sell to defendant Michele Spero ten acres of land adjoining and south of the center line, and told him at the time that the road to the width of 40 feet would be on his land, and in Spero's presence measured 40 feet for his fence line, upon which line Spero thereafter erected his fence, where it remained for about 4 years; that during that 4 years the road was being used as a road by the general public; that after Spero erected his fence on the 40-foot line, he asked of Wolfe permission to put a ditch inside the road, north of and close to his fence; that such permission was granted, and the ditch was constructed accordingly; that at the time defendant Satatriano received his deed, August 4, 1921, Michele Spero's fence was on the 40-foot line, and the road was, and for two years had been, in general use; that Satatriano also placed his fence on the 40-foot line, and left it there until the spring of 1924, and that during that time the road was in general use by the public; and that at all times the defendants knew that plaintiffs Vendue and Rocco

Garramone had their fences on the east and west center line of the quarter section.

The following facts are established by undisputed evidence: On December 16, 1919, Whitelaw D. Bish, who was then executor of the Fisher estate, deeded to John R. Smith that part of the quarter section lying south of the center line thereof. When Smith bought the land he had seen a map showing the 40-foot road on the south side of the center line, and knew that such road had been laid out and partly constructed. He took the deed with the understanding that the 40-foot road was to be there. At the time defendants Michele and Vincenzia Spero took their deed, they had their fence on a line 40 feet south of that center line. On August 9, 1921, Smith executed a deed to the defendant Satatriano. It reserved from the conveyance "rights of way for ditches and roads as they now exist on said lands." On September 30, 1921, Smith executed a deed to the defendants Alexander and Jones. It conveyed the tract subject to a right of way "for road opened or platted." Jones admitted on the witness stand that he had seen the map showing the location of the road; that he got one of the maps when he bought the place; that he knew that the Garramones had their fences right on the east and west center line; and that he knew that his deed excepted roads as laid out, but he denied knowing that the entire 40 feet of the road were on his land. On October 27, 1921, John R. Smith executed a deed to the defendants Michele and Vincenzia Spero. It conveyed the tract subject to a right of way "for roads as laid out or platted." The Garramone fences were placed on the east and west center line, and were there when defendants Alexander and Jones received their deed. The Garramone tracts are across the road from the land deeded to Alexander and Jones. In the spring of 1924, or, as one witness said, about three years before the trial, Michele and Vincenzia Spero and Satatriano moved their fences from the old line 40 feet south of the center line

to a line only 20 feet south of the center line of the quarter section. At about this time Alexander and Jones built their fence the same distance (20 feet) from the center line. This suit was commenced April 17, 1926.

1. The defendants (plaintiffs in error) devote a considerable part of their brief to the contention that Wolfe, as executor, had no authority to dedicate the strip of land to the use of the public as a road. But as the plaintiffs (defendants in error) say that they do not claim any dedication by the executor, Thomas Wolfe, the questions when an executor may make such a dedication, and what steps are necessary to make such dedication valid, need not be discussed in this opinion.

2. The trial court found that it was the intention of Thomas Wolfe, the executor, to dedicate, and also that John R. Smith intended to dedicate; and the court further found that in 1919 there was a dedication of the 40-foot strip to the use of the public as a road. Assuming that Wolfe had no authority to make a dedication, still his acts have an important bearing upon the question of Smith's intention. The following are extracts from the testimony of Smith:

"Q. At the time you bought the land what was your understanding as to where the road would be, Mr. Smith? A. There was but one road affecting any of that land that I bought, and that was a road which had been at least partly constructed, and as I then understood and still understand to have been wholly laid out some time before by Mr. Thomas Wolfe when he was manager of the Fisher land matters; that road extending right across the center of the northwest quarter, running east and west, and my understanding of that road then was that it was to be a forty-foot road, extending across that quarter section, continuing over this north line, the center line of the section.  *  *  *

"Exhibit A. This was a sketch map made, as I recall it, jointly by myself and Mr. Thomas Wolfe.

"Q. Let me ask you, was it agreeable with you that the road should be laid out forty foot in width wholly within the northwest quarter of section ten, township three, south range sixty-eight west? A. Yes, I am very certain that I accepted the deed with that knowledge and that understanding that that road was there and to be forty feet wide, and I think filing on the road had been informally, in some way, made some years before, and the road partly constructed across the quarter section.

"Q. I hand you plaintiffs' exhibit B, and ask you if that is a map that you have had in your possession since your purchase of that property? A. Yes, I recognize it. I recollect this, although I do not remember its pedigree at all, nor when it was made.

"Q. It has been in your possession since you purchased the property? A. Yes.

"Q. It shows the road just as you have testified there, does it not? A. Well, yes, there is a road marked there."

Exhibits A and B are maps, showing the 40-foot road adjoining and south of the center line of the quarter section. This testimony, considered in connection with the testimony of other witnesses, and in connection with the fact that in the deeds given by Smith the tracts were conveyed subject to, or with a reservation of, rights of way for roads laid out or opened up, justified the trial court in finding that there was in fact a dedication, as claimed by the plaintiffs.

3. Defendants argue that, as their contracts to purchase were made with Wolfe before Smith bought the land, they acquired rights that could not be prejudiced by Smith's dedication. Just what the contracts were that they had with Wolfe, as executor, is by no means clear. No written contracts are in evidence, nor does it appear that there were any. It does not appear whether or not Wolfe had any authority to make any contract to sell. However that may be, the defendants accepted from Smith the deeds containing the provisions already recited, and the defendants are bound thereby.

4. Another contention of the defendants is that there was no acceptance by the public of the dedication. It is unnecessary to again recite the evidence. Suffice it to say that it is ample to support the following finding of the trial court: "That said dedication was accepted by the public by general use from the time of its opening in the year 1919 until the year 1923, at which date the defendants, except the minors herein  *   *   *, obstructed the south twenty feet of the said road by fencing so much of said road with their lands."

5. From a perusal of the record, we conclude that the findings and judgment of the trial court are supported by the evidence.

The judgment is affirmed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE CAMPBELL and MR. JUSTICE ADAMS concur.